The Case
John Jordan being possessed oí a very Considerable p’sonal Estate sufficient to pay all his Debts with an overplus by his last Will and Testament in writirig bearing date the 6th Day of Februery in the [171] Year 1693. gives several Legacies to his Sons in Law John Spence and Thomas Spence (who were Bothers) in this manner “ I give to my Son John Spence 25 £ Steg. to be laid out in Negroes to be delivered to him upon the “ Day of his Marriage also 4 Cows &c. Item I give to my Son “ Thomas Spence two Negroes Mingo and Pegy to be delivered “ at the Day of Marriage and ten Head of Cattle See. But my “ Will is, that if the s’d John or Thomas shou’d die without “ Issue, that then whatsoever is Bequeathed to them the Sur- “ vivor shall have to him and his Heirs and Assigns.” The two Negroes were delivered to Thomas by Dorcas Jordan the Testors Wife and Exec’x, and he possessed them during his Life & died with’t Issue in the Life time of John who had the Negroes in possession and died leaving only one Child (the Compl’t Waddys Wife) After John Spences death Dorcas Jordan brought an Action of Trespass in the General Court ag’t Laurence Pope and his Wife, who was the Widow of John Spence, for recovering Mingo and Pegy and a Child that was born of her And obtained a Judgm’t Accordingly the 23. October 1700, ag’t the Defts. The Compl’t Jane being at that time ab’t 2 Years old.
After the Judgm’t the Negroes were taken by Execution & Sold or disposed of by Dorcas Jordan and are now with their Increase in the Possession of a Person in Maryland
And the Compl’ts have exhibited their Bill ag’t the Defts. Exors of the last Will & Testam’t of John Spence Se the Surviving Ex’or of Dorcas Jordan, And the End of the Bill is to recover the value of these Negroes with Interest out of the Estate of Dorcas which came to the Plands of the Defts. Testor. They severally pleaded the Act of Parliament made in the 4th Year of the Reign of H. 4. And the Act of Limitation made in Virg’a Anno 1705, in bar to the Bill. And have Answered that John *R62 Sturman Acted jointly with other Ex’ors, that they paid all the Debts & Legacies, That they don’t know that any part of the Estate came to his Hands seperately from the other Ex’ors. but they believe no part of it remained in his Hands at the time of his death The residue of the Estate being divided & distributed According to the Will & as to the Judgment they believe there was no fraud or Covin in the obtaining it. But that it was fairly given upon the Justice and Merits of the Cause
And that several of the Increase of these Negroes which were Recovered by the Judgement were disposed of by the Will of Dorcas & delivered Accordingly Vid. the Answer as to this
The first Question is Whether the Compl’t — (Waddys Wife) hath any right to demand these Negroes or the value of them by the words of Jordons Will, And if she has, then whether the Judgm’t by the Stat. [172] H. 4. or the Act of Limitation shall bar that right
As to the Compl’ts right to the Legacy given in Rem’r to her — after the death of Thomas. I think it is clear & the Rem’r good. For tho’ the Law doth not allow the Rem’r of a Chattle (as Negroes were then) to be Limitted after dying without Issue generally, Yet in a Will if a Man gives a Chattle to one and if he die with’t Issue to another, that Rem’r is good. It is true in the Legal Construction of the words (dying with’t Issue) a Man is say’d to die with’t Issue when his posterity fails, if it be 100 Years after his death. But in Common Parlance, or According to the Vulgar Acceptation, a Man is said to die without Issue when he have no Issue at his death.
And wherever by the words of a Will the Vulgar Acceptation can take place Law and Equity will construe them so as not to frustrate the Testors Intent. So in this Case the Testor plainly Intended that if Tho’s died with’t Issue in the lifetime of John, then & not otherwise his Legacy shou’d go to John, therefore the Rem’r was good and vested in John when he Survived Thomas So is the Case of Pinbury & Elkins 2. Vern. 788. 766. where Chattels were Devised to one and if she died without Issue, after her decease to another It was held by the Lord Chancellor, that the words (after her Decease) shewed the Testors. Intent to be, that if she left no Issue living at her death the Rem’r shou’d take place and therefore Decreed Accordingly.
*R63 But if the Rem’r was not good the whole property vested in Thomas and then we claim as next of kin. Then consider the right Dorcas had to recover these Negroes It is admitted in the Case that she delivered them to Thomas and after that she had no right to demand them again, not even for the paym’t of Debts, but the property absolutely vested in Tho’s upon the Assent and Delivery.
So is the Case of Noel & Robinson. 1. Vern. 90. 2. Vent. 358. Now as to the matter of the Pleas. The Stat. of H. 4. was never intended to take away the Jurisdiction of the Court of Chan’cy. As appears by the Case stated upon that Statute, and the Arguments upon it At the End of the first Cha. Rep. But if it did that Stat. cannot be carr’d farther in Equity than at Law and no Judgm’t by that Statute can bar any but those who were Parties to the Judgm’t. -
So is the Case of Lock & Norborn 3. Mod. 143. As to the Stat. of Limitations that is likewise no bar in this Case, because it is a Suit for a Legacy And a Legacy is not within that Stat. Between Parker and Ash. 1. Vern. 256. By Lord Chancellor.
[173] Now if we have a right and are not barred by either of these Statutes, we can by the Rules of Equity pursue the Estate of the Testor John Jordan or his Ex’or Dorcas into whose Hands soever it hath come.
So is the Case of Nicholson and Sherman Cha. Ca. 57. And if the Exors of the Surviving Exor of Dorcas have nothing in their Hands, and it be true that her Estate was deliv’d to several Legatees of her Will, we must make them Parties to the Bill and bring them to Answer.
And it was Decreed Accordingly by the Court.